UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**ANDRE JACKSON**,

                Plaintiff,

v.                                             **Case No. 14-cv-1206-pp**

**DAVID GRAVES, Walworth County Sheriff, and
WALWORTH COUNTY,**

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE
TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 2), GRANTING PLAINTIFF'S
MOTION FOR LEAVE TO AMEND COMPLAINT (DKT. NO. 9), GRANTING
PLAINTIFF'S REQUEST FOR A REPORT ON THE STATUS OF HIS CASE
(DKT. NO. 12), AND SCREENING PLAINTIFF'S AMENDED COMPLAINT**

---

      The plaintiff, a state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that his civil rights were violated when he was in custody in Walworth County. Dkt. No. 1. This order resolves the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2), his motion for leave to amend his complaint (Dkt. No. 9), and his request for an update on the status of his case (Dkt. No. 12), as well as screening of the plaintiff's amended complaint.

**I.**     **MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**

      The Prison Litigation Reform Act applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff

1

pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On October 6, 2014, the court issued an order directing the plaintiff to pay an initial partial filing fee of $3.07. Dkt. No. 5. The court received the payment from the plaintiff on October 14, 2014. The court will grant the plaintiff's motion for leave to proceed *in forma pauperis*, and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II.     MOTION FOR LEAVE TO AMEND COMPLAINT

On March 16, 2015, the plaintiff filed a thorough motion to amend his complaint, along with a complete proposed amended complaint. This motion complies with Civil Local Rule 15, and "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, the court will grant the motion, and will screen plaintiff's amended complaint.

## III.    SCREENING OF PLAINTIFF'S AMENDED COMPLAINT

### A.     Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that

2

seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the factual contentions are clearly "baseless." Neitzke, 490 U.S. at 327. "Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

3

alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.    Facts Alleged in the Amended Complaint

In 2014, the plaintiff was housed at the Walworth County Jail as a federal pretrial detainee. Dkt. No. 10 at 1-2. On August 20, 2014, there was a commotion in the D dorm, during which the plaintiff very aggressively yelled

4

and swore at another inmate named Steffen. Id. at 3. Steffen made it appear that he was not the instigator of the incident, but witnesses told the correctional officer that Steffen was needling the plaintiff. Id. According to the responding officer, "Steffen was needling Jackson over the TV set. Steffen would not let it be and kept egging Jackson on until Jackson lost his cool." Dkt. No. 10-1, Ex. A.

The plaintiff was escorted to administrative segregation in handcuffs and stayed there for five days, after which he was returned to male classification for thirty days; he received a disciplinary infraction. Dkt. No. 10 at 3. In contrast, inmate Steffen was not placed in handcuffs in response to the incident, and he was sent to male classification for only one night, then released for Huber (work privileges). His disciplinary infraction was dismissed. Id.

On August 29, 2014, correctional officer Glover took the plaintiff to the law library to do some research. Id. at 4. Thirty minutes later, while the plaintiff's copies of case law were still printing, Glover returned the plaintiff to male classification. Id. at 4. The plaintiff was told not to make any more copies until he had money. Id. In addition, the printed copies he'd already made were destroyed, and he received a disciplinary infraction for theft. Id., and Dkt. No. 10-2. The plaintiff pointed out that he takes high blood pressure medication, and that while he doesn't have the money to pay for that (any more than he has the money to pay for copies of case law), he receives it anyway. Dkt. No. 10 at 4; Dkt. No. 10-3.

C.  Legal Analysis of Alleged Facts

The plaintiff asserts a number of different claims against defendants Sheriff David Graves and Walworth County. In Count I, the plaintiff alleges that the defendants discriminated against him on the basis of race, because he is African American and inmate Steffen is Caucasian. Id. at 5-8. He argues that the Walworth facility had a relatively low African American population, and that he was harassed and called names as a result. Id. He alleges that there was a policy at the jail which fostered and encouraged discrimination against African American inmates. Id. He alleges that the defendants denied him equal protection under the law. Id.

In Count II, the plaintiff asserts an access to the courts claim, arguing that he was denied access to law libraries and persons trained in the law, which deprived him of the ability to communicate a defense. Id. at 8-10. He argues that this denial prejudiced his defense and violated his First Amendment rights, as well as denying him his Fourteenth Amendment due process rights. Id.

In Count III, the plaintiff makes a broad deliberate indifference claim, alleging inadequate staffing, failure to train staff, and "other policies and customs." Id. at 10-12. In Count IV, the plaintiff alleges that the discrimination and harassment constituted intentional infliction of emotional distress. Id. at 12-13. In Count V, the plaintiff asserts a "Monell claim against Walworth County," alleging customs and policies of racial discrimination, mental and verbal abuse, filing of false infraction reports, failure to report unconstitutional

6

conduct of officers, failure to train and supervise officers, and failure to investigate officer conduct and discipline officers. Id. at 14-15. In Count VI, the plaintiff seeks indemnification by Walworth County under Wis. Stat §895.46. Id. at 16-17.

As an initial matter, the court will dismiss Count VI. Section 895.46 of the Wisconsin Statutes does not provide a private cause of action for indemnification. Rather, it provides that if a public officer or employee, acting in his or her official capacity, is sued as an individual, and the jury finds that the officer or employee was acting within the scope of his or her employment, the state (or the political subdivision which employees the officer or employee) will pay the damages. In other words, if the plaintiff successfully sued a public officer or employee, and a jury found that defendant to have been acting within the scope of employment, this statute provides for the state to pay the damages on behalf of that defendant. It does *not* allow a plaintiff such as the plaintiff here to sue the state for damages. See Miller v. Mauston Sch. Dist., 222 Wis. 2d 540, 550 (Wis. App. 1998); Carlson v. Pepin Cnty, 167 Wis. 2d 345, 356 (Wis. App. 1992) (§895.46, "which provides indemnity by the state for judgments against public employees because of acts committed within the scope of their employment, does not permit a tort victim to sue the state directly").

The court next notes that the complaint contains no allegations that Sheriff Graves was personally involved in either the "needling" incident or the incident in the library. This means that all of the plaintiff's claims against

Sheriff Graves are in his official capacity, and therefore the law treats those claims as claims against Walworth County itself. Grieveson v. Anderson, 538 F.3d 763, 771 (7th Cir. 2008) (citing Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 765 (7th Cir. 2006)).

A plaintiff may sue a government entity under §1983 ". . . when the government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." Monell v. City of New York Dep't of Social Servs., 436 U.S. 658, 694 (1978). There must be a "direct causal link" between the alleged unconstitutional deprivation and the municipal policy or custom at issue. City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Further, a government entity is liable under §1983 "only where the [government entity] itself causes the constitutional violation at issue." Id. at 386 (citing Monell, 436 U.S. 658 at 695-95). The doctrine of "respondeat superior"—holding an employer liable for the actions of the employees—"will not attach under § 1983." Id.

The plaintiff made a separate Monell claim in Count V of his amended complaint, but any of the claims the plaintiff has asserted against Sheriff Graves and Walworth County are Monell claims, because they do not involve allegations against any individual defendant. Thus, for screening purposes, the court will consider whether Counts I through IV state Monell claims against Sheriff Graves and Walworth County.

The court construes the plaintiff's racial discrimination claim in Count I as a claim that the defendants violated the Equal Protection Clause of the Fourteenth Amendment.

> To establish a prima facie case of discrimination under the equal protection clause, [plaintiff is] required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class.

Brown v. Budz, 398 F.3d 904, 916 (7th Cir. 2005).

The plaintiff has alleged that he is African American and that the Walworth County Jail has a low African American population. He suggests it was the policy or custom at the Walworth County Jail to stereotype African American inmates and treat them differently from other inmates. Specifically, the plaintiff asserts that he received harsher punishment for the altercation on August 20 because he is African American and Steffen is not. The court finds that these allegations are sufficient to allow the plaintiff to proceed on Equal Protection Monell claims against Sheriff Graves and Walworth County.

The plaintiff's next claim, Count II, alleges that he was denied access to the courts because he was unable to photocopy case law as a result of having no money to pay for the copies. The plaintiff relies on Bounds v. Smith, 430 U.S. 817, 824 (1977), in which the Supreme Court held: "It is indisputable that indigent inmates must be provided at state expense" with the basic material necessary to draft legal documents, and with stamps to mail them. The plaintiff submits that the defendants' policy requiring inmates to pay for copies of case law violated his rights under the First, Fifth and Sixth Amendments.

9

A defendant violates an inmate's right to access to the courts "when a prisoner is deprived of such access and suffers actual injury as a result." Ortiz v. Downey, 561 F.3d 664, 671 (7th Cir. 2009). A plaintiff must allege both that prison officials failed to help him prepare and file meaningful legal papers, and that he lost a valid legal claim or defense because of the challenged conduct. Id. at 671.

In this case, the plaintiff alleges that he was deprived of the right to participate in his defense. Given his assertion that the defendants' policies violated his rights under the Fifth Amendment (federal due process) and the Sixth Amendment (right to counsel in criminal case), the court assumes that the plaintiff was working on his federal criminal case when his copying was interrupted. The plaintiff has not alleged, however, that he lost a valid legal claim or defense because of the challenged conduct. Accordingly, the court will not allow the plaintiff to proceed on an access-to-the-courts claim under any legal theory.

In Count III, the plaintiff generally asserts that Sheriff Graves and Walworth County were deliberately indifferent. He repeatedly uses the phrase "care, custody and welfare," but the only specific claims the plaintiff makes are that the defendants failed to adequately staff the jail and failed to train deputies and correctional officers on how to respond to a detainee's requests or needs. The plaintiff does not directly state this conclusion, but the court infers that the plaintiff may believe that these failures (to adequately staff or to train staff) led to the racial discrimination the plaintiff alleges that he suffered at the

10

jail. At this early stage, the court will allow the plaintiff to proceed on Monell claims regarding failure to adequately staff the jail and failure to train jail staff.

Finally, the plaintiff alleges that the harassment and discrimination constituted intentional infliction of emotional distress, which is a Wisconsin state law tort claim. A plaintiff states a claim for intentional infliction of emotional distress by pleading that (1) the defendant intended to cause him emotional distress by the defendant's conduct; (2) the conduct was extreme and outrageous; (3) the conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) the plaintiff suffered an extreme disabling response to the defendant's conduct. Anderson v. Cont'l Ins. Co., 85 Wis.2d 675, 694-95 (1978). The plaintiff has not alleged that the individual defendant, Sheriff Graves, acted in an outrageous manner, or that he intended to inflict severe emotional distress. See Jacoby v. DuPage Cnty. Ill., 2013 WL 3233339 at *4 (N.D. Ill., June 26, 2013) (citing Cook v. Winfrey, 141 F.3d 322, 330 (7th Cir. 1998). Nor has he alleged an extreme, disabling response (while he mentions pain, anguish, embarrassment and humiliation, he does not allege any specific manifestation of his alleged distress). See Coltman v. Kase, 2015 WL 5090577 (Wis. Ct. App., Aug. 31, 2015). The court will dismiss Count IV.

## IV. REQUEST FOR STATUS OF CASE

In June 2015, the plaintiff filed a request that the court supply him with information regarding the status of his case. Dkt. No. 12. He noted that he'd not heard anything from the court since his case was assigned to Judge Pepper on December 29, 2014. The plaintiff is correct that it has taken the court much

longer than it should have to screen his complaint. The court regrets that such a significant amount of time has passed without it having screened the plaintiff's compliant. The court grants the plaintiff's request for status; this order constitutes that status report.

**V.    CONCLUSION**

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2). The court further **GRANTS** the plaintiff's motion for leave to amend complaint (Dkt. No. 9). The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $346.93 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The Secretary of the Wisconsin Department of Corrections or his designee shall clearly identify the payments by the case name and number assigned to this case.

The court **ALLOWS** the plaintiff to proceed on Monell claims against defendants Sheriff Graves and Walworth County for Equal Protection violations, as well as for failure to adequately staff the jail and failure to train jail staff.

The court **ORDERS** that the United States Marshal shall serve a copy of the complaint and this order upon Sheriff David Graves and Walworth County

12

pursuant to Federal Rule of Civil Procedure 4. The plaintiff court advises the plaintiff that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

The court **ORDERS** that the defendants shall file a responsive pleading to the causes of action on which the court has allowed the plaintiff to proceed.

The court **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. Because each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff also should retain a personal copy of each document filed with the court.

The court further advises plaintiff that if he does not timely file documents, the court may dismiss his case for failure to prosecute.

In addition, the parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send a copy of this order to the warden of the institution where the inmate is confined.

Dated at Milwaukee this 22nd day of September, 2015.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**