# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANDRE JACKSON,

                Plaintiff,

                                                      **Case No. 14-cv-1206-pp**

     v.

**DAVID GRAVES,** *et al.***,**

                Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 39) AND DISMISSING THE CASE

      Plaintiff Andre Jackson, a Wisconsin state prisoner who is representing himself, filed an action under 42 U.S.C §1983, alleging that the defendants violated his civil rights at the Walworth County Jail. Dkt. No. 10. The court screened the complaint pursuant to 28 U.S.C. §1915A, and allowed the plaintiff to proceed with two Monell claims: (1) an equal protection claim against Walworth County and Walworth County Sherriff David Graves; and (2) a failure-to-train claim against Walworth County. Dkt. No. 13.

      The defendants filed their motion for summary judgment on May 6, 2016, dkt. no. 39; the plaintiff responded on September 8, 2016, dkt. no. 51; and the defendants replied on September 20, 2016, dkt. no. 53. This decision and order resolves the motion.

1

**I. FACTS**[1]

    A.    <u>Parties</u>

The plaintiff is an African American male who was confined at the Walworth County Jail during the events described in the complaint. Dkt. No. 40, ¶ 1. The defendants are Walworth County and Walworth County Sherriff David Graves. Dkt. No. 10.

    B.    <u>The Plaintiff's Allegations</u>

On August 20, 2014, the plaintiff and a Caucasian inmate, Michael Steffen, engaged in a verbal altercation. Dkt. No. 40, ¶¶ 2-3. Correctional Officer Roger Millard heard the commotion, and observed the plaintiff yelling, swearing, and moving aggressively towards Steffen. <u>Id</u>., ¶¶ 5-7, 9. Millard also observed Steffen backing away from the plaintiff in what appeared to be an attempt to exit the situation. <u>Id</u>., ¶ 8. Millard believed that the verbal altercation could escalate into a physical altercation, so he called in for assistance. <u>Id</u>., ¶ 10.

Additional correctional officers arrived on the scene before the inmates engaged in any physical contact. <u>Id</u>., ¶11. The correctional officers separated the two inmates. <u>Id</u>., ¶¶ 12-13. They placed the plaintiff in handcuffs and took

---

[1] The court takes facts from the "Defendants' Proposed Findings of Facts" and the "Plaintiff's Response to the Defendants' Proposed Findings of Fact." Dkt. Nos. 40, 52. Where the plaintiff's objection to the Defendants' Proposed Findings of Fact does not cite evidentiary material, those facts are deemed admitted for the purpose of deciding summary judgment. Civ. L. R. 56(b)(4). The court takes additional facts from the plaintiff's sworn amended complaint, Dkt. No. 10, which the Seventh Circuit has instructed district courts to construe as an affidavit at the summary judgment stage. <u>Ford v. Wilson</u>, 90 F.3d 245, 246-47 (7th Cir. 1996).

him to non-disciplinary administrative segregation. Dkt. No. 52, ¶ 14. They placed Steffen in general population. Dkt. No. 40, ¶ 15.

Millard wrote an incident report on the verbal altercation, which stated that he observed the plaintiff advancing toward Steffen and Steffen backing away. Id., ¶20; Millard Aff., ¶ 14. The report also stated that Millard interviewed other inmates who witnessed the incident, and that the inmates stated that Steffen was "needling" the plaintiff over a TV set, that Steffen kept "egging" the plaintiff until the plaintiff lost his cool, and that Steffen "made it appear he was not the instigator." Id. Millard wrote in his report that "Steffen played a significant part in the disturbance." Id.

Correctional Sergeant Greg Sawtelle conducted the disciplinary hearings for both inmates. Dkt. No. 40, ¶¶ 22-23. After reviewing the incident reports, he sentenced both inmates to "5 days full sanction, stayed for 90 days." Id., ¶ 26; see Dkt. No. 45-1; see Dkt. No. 45-2.

The plaintiff alleges that he "received a harsher punishment" than Steffen because he is an African American. Dkt. No. 51 at 2. He states that the "harsher punishment" consisted of prison staff placing him in handcuffs, taking him to non-disciplinary administrative segregation for five days, returning him to general population for thirty days, and failing to give him a hearing until September 3, 2014. Dkt. No. 52., ¶ 21. He alleges that, in contrast, the prison staff did not handcuff Steffen, gave him a hearing the day after the incident, and allowed him to participate in Huber/work release the day after the incident. Id.

3

## II.     DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(c); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). The movant bears the burden of establishing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must designate specific facts that establish that there is a genuine triable fact. Fed. R. Civ. P. 56(e). The court grants summary judgment when no reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### B. Standard for Municipal Liability

To prevail on a claim for municipal liability under 42 U.S.C. §1983, the plaintiff must establish, as a threshold matter, that he suffered an underlying constitutional deprivation. See Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of [an] individual [] officer, the fact that the department regulations might have authorized [the unconstitutional conduct] is quite beyond the point."). Once the plaintiff establishes a constitutional deprivation, he must prove that an "official municipal policy" or the municipality's "failure-to-train" caused the constitutional violation. See Monell v. New York City Dept. of Soc. Servs., 436

4

U.S. 658, 692 (1978); see also Palmer v. Marion County, 327 F.3d 588, 597-97 (7th Cir. 2003). The plaintiff must allege something more than his own isolated experience to impose liability on a municipality. Calhoun v. Ramsey, 408 F.3d 375, 379 (7th Cir. 2005); Palmer, 327 F.3d at 596.

The plaintiff alleges that Sherriff Graves and Walworth County have a custom or policy of treating individuals at the Walworth County jail differently based on race. As a threshold matter, in order to prove this claim, the plaintiff must establish that: (1) he is a member of a protected class, (2) that the defendants treated him differently than others similarly situated, and (3) that they did so with discriminatory intent. Billings v. Madison Metro. School Dist., 259 F.3d 807, 812 (7th Cir. 2001).

The United States Supreme Court has long held that "race, alienage, and national origin" are protected classed. Vision Church v. Vill. of Long Grove, 468 F.3d 975, 1000 (7th Cir. 2006). The plaintiff bases his allegations of discrimination on race; the court finds that he has satisfied the first element of an equal protection claim. ==The plaintiff's evidence regarding the second and third elements, however, is too weak to establish an equal protection violation.== Therefore, the court must grant summary judgment in favor of the defendants and dismiss the case.

The only evidence that the plaintiff produces to establish his claim is his sworn amended complaint (which the court accepts as an affidavit at the summary judgment stage), and his "objections" to the defendants' proposed findings of fact. There are several problems with this evidence. First, the court

cannot accept as evidence many of the allegations in plaintiff's sworn complaint because they are not based on his personal knowledge. Under Fed. R. Civ. P. 56(c)(4), "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

On the one hand, the plaintiff alleges that he and Steffen were separated by unit for at least five days following the incident, during which time he was in non-disciplinary administrative segregation and Steffens was in general population. The defendants' evidence corroborates this fact. On the other hand, the plaintiff asserts that the prison guards treated Steffen "differently" during this time period—he alleges that they ignored or dismissed his disciplinary sanctions, that they allowed him to participate in Huber/work release one day after the incident occurred, and that they generally treated him better than they treated the plaintiff.

By his own admission, the plaintiff was not in general population with Steffan during this time. For this reason, he could not have personal knowledge of how prison staff treated Steffen; he was not there to see or hear what how they treated Steffan. The plaintiff may have heard from other inmates that Steffen was treated one way or another or that Steffen participated in Huber, but hearing things from other people is not "personal knowledge, set out in facts that would be admissible in evidence . . . ." Fed. R. Civ. P. 56(c)(4). In fact, information that someone hears from someone else outside of a hearing or trial

6

generally constitutes inadmissible hearsay, unless it meets certain exceptions. See Fed. R. Evid. 801, 803. The plaintiff provides no other evidence to prove that Steffen participated in Huber or that he received a less severe punishment than did the plaintiff. The only admissible evidence before the court shows that the plaintiff and Steffen received identical sentences: five days full sanctions, stayed ninety days. Dkt. No. 45-1; Dkt. No. 45-2.

Second, the plaintiff has not produced any evidence showing that he and Steffen were "similarly situated." While Millard's report does state that "Steffen played a significant part in the disturbance," the report also states that Millard saw the plaintiff yelling and swearing at Steffen. Dkt. No. 45-1. Sawtelle concluded that the plaintiff was the "aggressor" in the altercation, based Millard's observation of the plaintiff following Steffen into the sleep area. Id. At the disciplinary hearing, the plaintiff even admitted that he followed Steffen into the sleeping area. Id. When Sawtelle stated that the plaintiff should not have "pursued" Steffen as "a fight could have happened," the plaintiff replied that "there was not going to be any fight." Id. Because the evidence indicates that the plaintiff and Steffan did not play similar roles in the altercation, the plaintiff cannot establish that he and Steffen were "similarly situated" for equal protection purposes. See Banks v. Kartman, 2010 WL 1005947, *7-8 (W.D. Wis. Mar. 16, 2010) ("to be similarly situated, the individual at least must have engaged in similar conduct without [] differentiating or mitigating circumstances as would distinguish [his] conduct or the [decision maker's] treatment of him.").

Third, the record contains no evidence from which the court can reasonably infer "discriminatory intent." The plaintiff speculates that the defendants discriminated against him because he is African American, but mere speculation is not sufficient to survive summary judgment. Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 544 F.3d 752, 757 (7th Cir. 2008). The plaintiff must provide more that just his belief that the reason the defendants treated him differently was because of his race. He must provide some evidence to support that belief. He has not done so.

Because the plaintiff has not provided sufficient evidence to support a claim that his equal protection rights were violated, he cannot prevail on either of his Monell claims.

Even if the plaintiff had submitted sufficient evidence to prove a constitutional violation, the facts he provided related only to his own, isolated experiences. The plaintiff cannot establish a "widespread" custom or policy based only on his own isolated experiences. See Palmer, 327 F.3d at 596. A plaintiff seeking to prevail on a Monell claim must show such a "widespread" custom or policy.

The court will grant the defendants' motion for summary judgment and will dismiss the case.

## III. CONCLUSION

The court **GRANTS** the defendants' motion for summary judgment (Dkt. No. 39), and **DISMISSES** this case.

8

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 17th day of January, 2017.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge

9

Case 2:14-cv-01206-PP   Filed 01/17/17   Page 9 of 9   Document 54